THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. LUZ MARÍA R. DE VIDAL and NIEVES BARBOSA PALACIOS, Defendants and Appellants.

No. 7582. Argued May 17, 1939.—Decided July 5, 1939.

*José I. Fernández Segarra,* for appellants. *R. A. Gómez, Prosecuting Attorney* and *Luis Janer, Assistant Prosecuting Attorney,* for The People, appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Luz María Rosario de Vidal and Nieves Barbosa Palacios, together with Alberto Vidal who is not a party to this action, were prosecuted for violation of Section 4 of Act No. 25 of July 17, 1935, (Laws, Special Session, p. 153) committed on January 10, 1938, when the defendants, in their residence situated in Virtud Street No. 35, in the Playa de Ponce, "criminally as owners, directors or managers, and knowing that they are being used in the illegal games already mentioned (*boli-pool*), managed and operated a game generally known as *boli-pool* or clandestine combination, which is a clandestine lottery in Puerto Rico for the delivery of prizes in cash, through the sale of tickets..." A short description of the game follows, and also a statement of the things seized on the defendants premises consisting of tickets of the kind used in the game, a list of the numbers sold and the names of the purchasers and office stationery used in connection with the game.

A trial *de novo* having been held, the lower court found the appellants guilty of a violation of Section 4 of Act No. 25 of July 17, 1935, and sentenced each of them to pay a fine of $100 or one day in jail for each dollar unpaid, the imprisonment not to exceed ninety days, plus the costs.

228

The appellants charge the trial court with the commission of three errors, to wit:

"1. That the judgment entered in this case by the District Court of Ponce is contrary to the evidence and the law.

"2. That the District Court of Ponce committed manifest error in admitting, as it admitted, the documentary evidence offered by The People.

"3. That the District Court of Ponce committed serious error, harmful to the defendants, acting with bias, prejudice and partiality in weighing the evidence for The People."

■■ In compliance with a search warrant issued by one of the municipal judges of Ponce, the detective bureau searched the defendants' house. As it appears from the testimony of detective Oscar Correa who was the first to testify before the district attorney, upon coming into the house they found the defendant Luz María Rosario de Vidal seated at a table taking notes, and the other accused, Nieves Barbosa Palacios, and another young woman whose name does not appear from the record, checking the *boli-pool* tickets. That immediately following, they seized a large number of tickets, exceeding thirteen thousand, a box of clips, a pencil with the initials A. V. G., a stamp pad and a rubber stamp which reads "accepted", thirty lists and some blank sheets of paper.

The witness explained how the game is played and the use which is made of the implements seized which we have just mentioned. This witness also testified that upon seeing them, the accused Luz María Rosario de Vidal said: "We are caught."

The second and last witness for The People was Juan R. Colón, Chief of Detectives in Ponce who corroborated his colleague's testimony exception made of the statement which Correa testified to have heard from Mrs. Vidal and which was not heard by Colón because when they came in the house, the young woman whose name does not appear from the record, escaped and this witness went after her.

A motion for non-suit being overruled, no evidence was introduced for the defense, the case being submitted on the evidence of The People.

The defense lays great stress on the fact that it was not proven what the defendants were doing with the several implements referred to above, at the time when the police came into the house, and also emphasizes the fact that detective Correa testified that he knew the rules for the game of *bolipool,* due to the fact that he had other people buy tickets for him and these people informed him about them. But said witness also testified that two years before he had played the same game and he knew the tickets which were then used, and that the ones used at present have been modified. Counsel for the defense holds that this witness' testimony constitutes hearsay evidence in respect to the manner of playing the game, and that consequently, that part of his testimony should have been stricken, and once stricken, the defendants should have been acquitted for want of sufficient evidence.

As to the first contention, that is, the one which refers to the use which the defendants were making of the several implements at the time they were caught by the police, the case of *People* v. *Morales,* 51 P.R.R. _____ categorically answers the same. In that case, the implements used in the game were seized under the accused's bed. It was then stated by this Court, upon deciding the same objection of the defendants herein:

" . . . The appliances found under the bed of the defendant were evidently of the same kind as those ordinarily used in said game. It was not necessary that said appliances should have been used precisely at the time they were confiscated by the police.

"The possession of the objects by the defendant, her denial that there were such objects in her house, and her admission at the time they were found under her bed, that she was being deprived of what had provided her with the means of repairing her house and of buy-

ing furniture, were sufficient elements of proof to produce in the mind of the judge the conviction that the appliances found were being used by the defendant in the operation of the game of *'bolita'* ''.

In the instant case, as we have seen, the implements of the game were found, at least in part, over a table next to which the defendants were situated, one of them taking notes and the others checking the tickets. As in the case of *People* v. *Morales,* supra, one of the accused uttered the exclamation before mentioned, which in the circumstances is equivalent to a declaration of guilt.

■■ The rules of a game constitute matter of special knowledge and any witness who knows the game may testify on the manner of playing the same. In our judgment, it is not indispensable that a person has taken part in a game in order to explain the rules by which it is governed, especially when the games involved, as in the present case, are so widely known in this Island. Besides, witness Correa, as we stated already, testified that two years prior to the day of the happenings he had participated in the *boli-pool* game, although he learned later on from other persons about the modifications which had taken place subsequently. We think that this circumstance could affect the weight of the evidence but not its competency and admissibility.

In the case of *Honea et al.* v. *State,* (Ark. 1928) 3 S. W. (2d) 679, the appellants were charged with having unlawfully and wilfully bet $1 in a certain game of hazard and skill with cards generally known as poker. They were fined $10 each by the justice of the peace and having appealed to the Circuit Court, a trial *de novo* was held, after which they were again convicted and sentenced to pay the same fine. On appeal to the Supreme Court of Arkansas they alleged that the evidence was insufficient to sustain the verdict and judgment.

It appeared from the evidence that the sheriff and one of his deputies had observed that some boys used to frequent

a house-boat near the bank of a river. Accompanied by one of his assistants he entered into the house-boat to ascertain what the boys were doing. When the sheriff entered, Honea saw him and warned the boys, one of whom threw a deck of cards into the river while the others put the money in their pockets. The sheriff found two or three decks of cards on a shelf in the boat. Over the objection of the defense, the prosecuting attorney was permitted to ask the sheriff whether the arrangement found by him in the house-boat was similar to those found by him on previous raids on other poker games. The sheriff answered that they were identical. The defense alleged that the admission of such question and answer constituted reversible error. On affirming it, the court said:

'' . . . This testimony, together with the circumstances detailed above, was substantial evidence tending to show that appellants were guilty of playing poker contrary to the statute inhibiting same.''

We have studied the transcript and have been unable to find the slightest scintilla of evidence to justify the charge imputed to the judge of the lower court to the effect that he was influenced by bias, prejudice and partiality on weighing the evidence in this case.

On the contrary, we are of the opinion that the trial judge correctly weighed the evidence, and no error having been committed in applying the law, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Travieso took no part in the decision of thi. case.